**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| **WT REPRESENTATIVE LLC** in its Capacity as Securityholder Representative,<br><br>Plaintiff,<br><br>v.<br><br>**PHILIPS HOLDINGS USA INC.**,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | C.A. No. 2024-0170 PRW |

Submitted: July 23, 2024
Decided: August 16, 2024

*Upon Defendant Philips Holdings USA Inc.'s Motion to Dismiss,*
**DENIED, in part; GRANTED, in part.**


## MEMORANDUM OPINION AND ORDER

C. Barr Flinn, Esquire, Paul J. Loughman, Esquire, Michael A. Carbonara, Jr., Esquire, YOUNG CONAWAY STARGATT & TAYLOR LLP, Wilmington, Delaware, Eric Leon, Esquire (*argued*), LATHAM & WATKINS LLP, New York, New York, Nathan A. Sandals, Esquire, LATHAM & WATKINS LLP, Boston, Massachusetts, *Attorneys for Plaintiff WT Representative LLC in its Capacity as Securityholder Representative*.

Patricia L. Enerio, Esquire, Emily A. Letcher, Esquire, HEYMAN ENERIO GATTUSO & HIRZELL LLP, Wilmington, Delaware, Laurence A. Schoen, Esquire (*argued*), Breton Leone-Quick, Esquire, MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO, P.C., Boston, Massachusetts, *Attorneys for Defendant Philips Holdings USA Inc.*

**WALLACE, J.**[1]

---

[1]  Sitting by designation of the Chief Justice pursuant to *In re Designation of Actions Filed Pursuant to 8 Del. C. § 111* (Del. Sept. 18, 2023) (FIRST AMENDED ORDER).

## I. FACTUAL AND PROCEDURAL BACKGROUND[2]

### A. THE PARTIES

Plaintiff WT Representative LLC is based in Delaware and the designated "Securityholder Representative" in the operative agreement.[3] That agreement involves the sale of Vesper Medical, Inc., a privately-held medical equipment company and non-party to this action.[4] Vesper created a minimally invasive stent system known as the "DUO Venous Stent System" that allows medical professionals to treat deep venous obstructions.[5]

Defendant Philips Holdings USA Inc. is a Delaware corporation and the "Parent" under the operative agreement.[6]

### B. THE FDA PRE-APPROVAL PROCESS

In 2016, Vesper began the FDA approval process for its DUO Venous Stent System.[7] To meet the FDA's requirements, Vesper first needed to obtain approval of

---

[2] This background is drawn from the pleadings, which include the Verified Complaint and the documents incorporated therein. *See Allen v. Encore Energy Pr's, L.P.*, 72 A.3d 93, 96 n.2 (Del. 2013) ("Generally, a judge should not consider matters outside of the pleadings when he rules on a Court of Chancery Rule 12(b)(6) motion. A judge may consider documents outside of the pleadings only when: (1) the document is integral to a plaintiff's claim and incorporated in the complaint or (2) the document is not being relied upon to prove the truth of its contents.") (internal citations omitted)).

[3] Verified Complaint ("Compl") ¶¶ 2, 7 (D.I. 1).

[4] *Id.* ¶ 2.

[5] *Id.* ¶ 1.

[6] *Id.* ¶¶ 1, 8.

[7] *Id.* ¶ 21.

an Investigational Device Exemption ("IDE").[8]  Vesper filed its initial IDE in January 2019.[9]  In its initial IDE, Vesper included the entire catalog of DUO Venous Stent System sizes, from narrowest to widest and shortest to longest.[10]  In turn, the stents that were 10 millimeters in diameter—the narrowest in Vesper's stent catalog—were included in Vesper's initial FDA filing.[11]

In 2020, Vesper amended its IDE.[12]  In the amended version, Vesper informed the FDA that it would no longer utilize the 10mm stents in clinical trials.[13]  Vesper removed the 10mm stents because it "had received clinician feedback indicating that the 10mm diameter extension stents are unlikely to be utilized in iliofemoral anatomy."[14]  The FDA approved Vesper's amended IDE later that year.[15]  Vesper then began its clinical trial on the DUO Venous Stent System without the 10mm stent.[16]

## C. THE MERGER AGREEMENT

In December 2021, Philips acquired Vesper via the "Merger Agreement."[17]

---

[8]   *Id.* ¶¶ 20-21.

[9]   *Id.* ¶ 23.

[10]   *Id.* ¶ 24.

[11]   *Id.*

[12]   *Id.* ¶ 25.

[13]   *Id.*

[14]   *Id.*

[15]   *Id.* ¶ 26.

[16]   *Id.* ¶¶ 26-27.

[17]   *Id.* ¶¶ 2, 35; *see generally id.*, Ex. B ("Merger Agreement").

In addition to the purchase price paid at closing, the Merger Agreement provides for a potential "Milestone Payment" relating to the DUO Venous Stent System.[18] According to Section 2.8(a), "[WT Representative] shall be eligible to receive a [Milestone Payment]" if "the FDA Authorization Milestone is achieved" by specified dates.[19] Section 2.8(a)(ii) further specifies the Milestone Payment amount earned if FDA Authorization with respect to the first- or second-generation systems is achieved on separate dates.[20]

FDA Authorization is defined in the Merger Agreement as "the receipt by Parent from the FDA of an order approving a Premarket Approval application or supplemental application . . . ."[21] FDA Authorization Milestone is defined as "the receipt by a member of the Parent Group of FDA Authorization for each of the DUO Venous Stent First Generation System and the DUO Venous Stent Second Generation System."[22]

Both the first- and second-generation DUO Venous Stent Systems are defined as well. The first-generation system is "comprised of the DUO-HYBRID Stent, the

---

[18] Merger Agreement § 2.8.

[19] *Id.* § 2.8(a)(i).

[20] *Id.* § 2.8(a)(ii).

[21] *Id.* § 2.8(h)(vii). "Premarket Approval" is a capitalized term in the Merger Agreement but is not defined.

[22] *Id.* § 2.8(h)(viii). "Parent Group" means Parent and Parent's affiliates. *Id.* § 2.8(h)(xiii).

DUO-EXTEND Stent and a pin and pull manual delivery system[.]"[23] The second-generation system is defined as "the DUO-HYBRID Stent, the DUO-EXTEND Stent and the DUO Triaxial/Handle Stent Delivery System."[24]

The "DUO-EXTEND Stent" is defined as:

> the Company's self-expanding venous stent intended to improve luminal diameter in symptomatic venous outflow obstructions, which integrates with the DUO-HYBRID Stent to treat longer lesions in the following sizes: 10mm x 40mm, 10mm x 60mm, 10mm x 80mm, 10mm x 100mm, 10mm x 120mm, 10mm x 140mm, 12mm x 40mm, 12mm x 60mm, 12mm x 80mm, 12mm x 100mm, 12mm x 120mm, 12mm x 140mm, 14mm x 40mm, 14mm x 60mm, 14mm x 80mm, 14mm x 100mm, 14mm x 120mm, 14mm x 140mm, 16mm x 40mm, 16mm x 60mm, 16mm x 80mm, 16mm x 100mm, 16mm x 120mm, 16mm x 140mm.[25]

"Duo-HYBRID Stent" means:

> the Company's self-expanding venous stent intended to improve luminal diameter in symptomatic venous outflow obstructions in the following sizes: 12mm x 60mm, 12mm x 80mm, 12mm x 100mm, 12mm x 120mm, 12mm x 140mm, 12mm x 160mm, 14mm x 60mm, 14mm x 80mm, 14mm x 100mm, 14mm x 120mm, 14mm x 140mm, 14mm x 160mm, 16mm x 60mm, 16mm x 80mm, 16mm x 100mm, 16mm x 120mm, 16mm x 140mm, 16mm x 160mm, 18mm x 60mm, 18mm x 80mm, 18mm x 100mm, 18mm x 120mm, 18mm x 140mm, 18mm x 160mm.[26]

Merger Agreement Section 2.8(b) provides certain "FDA Authorization

---

[23] *Id*. § 2.8(h)(v).

[24] *Id*. § 2.8(h)(vi).

[25] *Id*. § 2.8(h)(ii).

[26] *Id*. § 2.8(h)(iii).

Obligations."[27]  Relevant here, it says:

> From and after the Closing, until the earlier of the achievement of the FDA Authorization Milestone and December 31, 2024, Parent shall, directly or through its controlled Affiliates, use Commercially Reasonable Efforts to achieve the FDA Authorization Milestone (including with respect to achieving FDA Authorization for both the DUO Venous Stent First Generation System and the DUO Venous Stent Second Generation System) . . . .[28]

"Commercially Reasonable Efforts" is defined as follows:

> such reasonable, good faith efforts and resources as a medical device company of a similar size and with similar revenues as Parent and the other members of the Parent Group would normally use to accomplish a similar objective, activity or decision under similar circumstances and with respect to similar objectives, it being understood and agreed that such efforts and resources shall be consistent with those efforts and resources commonly used by such a medical device company under similar circumstances for a similar product owned by it, or to which it has similar rights, which product is at a similar stage in its product life and is of similar market potential, taking into account all relevant factors, including . . . (E) the likelihood and difficulty of obtaining Regulatory Approval in the United States . . . .[29]

Under 2.8(b)(iii), "Parent (and its controlled Affiliates) shall not take any action in bad faith with the primary purpose of avoiding or minimizing the amount of the Milestone Payment."[30]

Section 2.8(c) is titled "Post-Closing Operations" and details how Philips

---

[27]  *Id*. § 2.8(b).

[28]  *Id*. § 2.8(b)(i).

[29]  *Id*. § 2.8(h)(i).

[30]  *Id*. § 2.8(b)(iii).

must operate Vesper after the closing.[31]  Relevant here, it provides that "Parent shall have sole discretion over all matters relating to . . . the pursuit of the FDA Authorization Milestone" and that "Parent is under no obligation to operate the business of the Company to maximize the Milestone Payment."[32]  It also specifies that "that there is no assurance that any Milestone Payment will be realized by the Securityholders and that no member of the Parent Group or any Representative thereof has promised or projected any specific amount."[33]

## D. FDA APPROVAL, BUT NO MILESTONE PAYMENT

Soon after the Merger Agreement closed, the DUO Venous Stent System clinical trials were completed.[34]  Vesper (now operated by Philips) then submitted a Pre-Market Approval ("PMA") application to the FDA.[35]  The PMA application attached to the complaint[36] provides the Duo Venous Stent System configurations, categorized by type, diameter, length, and delivery system.[37]  Consistent with the

---

[31]  *Id*. § 2.8(c).

[32]  *Id*. § 2.8(c)(i).

[33]  *Id*.

[34]  Compl. ¶ 45.

[35]  *Id*. ¶ 47; *id*., Exs. C.1-C.2 ("PMA Application").

[36]  Philips disputes the authenticity of the PMA application attached to the complaint.  But that quibble ultimately boils down to a factual dispute inappropriate for resolution at this pleadings stage.

[37]  PMA Application at 4.

amended IDE, the attached PMA application doesn't include the 10mm stents.[38] Otherwise, all stent measurements listed in the Merger Agreement are included in the attached PMA.[39]

In late 2023, the FDA issued its order approving the PMA application.[40]  The FDA thus authorized Vesper to market the DUO system in every configuration included in the PMA, "inclusive of the First Generation and Second Generation delivery devices."[41]

In early 2024, Philips informed WT Representative that Vesper did not achieve the FDA Authorization Milestone because the FDA's approval order did not include approval for 10mm stents.[42]  After exhausting the Merger Agreement's dispute resolution procedures, WT Representative brought this suit.[43]

In its February 2024 complaint, WT Representative pens three breach-of-contract counts against Philips: breach of contract for failing to make a Milestone Payment (Count I);[44] breach of contract for failing to use Commercially Reasonable

---

[38]  *See id.*

[39]  *Id.*

[40]  Compl. ¶ 48.

[41]  *Id.*

[42]  *Id.*¶ 49.

[43]  *Id.* ¶¶ 50-52.

[44]  *Id.* ¶¶ 56-60.

Efforts to achieve the FDA Authorization Milestone (Count II);[45] and, breach of contract for acting in bad faith to avoid making the Milestone Payment (Count III).[46]

Philips has moved to dismiss the complaint in its entirety.[47]

## II. PARTIES' CONTENTIONS

As to WT Representative's Count I, Philips says that the Merger Agreement's plain language requires approval of all enumerated stent sizes—including the 10mm diameter stents—to trigger a Milestone Payment.[48]  In response to Count II, Philips contends that it did, in fact, seek FDA approval for the 10mm stents.[49]  Philips also says that WT Representative fails to adequately plead its second count based on the Merger Agreement's language governing commercially reasonable efforts.[50]  With reference to Count III, Philips argues that the complaint lacks conceivable facts demonstrating any bad faith.[51]

WT Representative opposes Philips' motion to dismiss.[52]  WT Representative

---

[45]  *Id.* ¶¶ 61-65.

[46]  *Id.* ¶¶ 66-70.

[47]  *See generally* Opening Brief in Support of Philips Holding USA Inc.'s Motion to Dismiss Plaintiff's Complaint ("Philips' Mot. to Dismiss") (D.I. 20).

[48]  *Id.* at 26-35.

[49]  *Id.* at 14-23, 44-49.

[50]  *Id.* at 35-44.

[51]  *Id.* at 44-49.

[52]  *See generally* Plaintiff WT Representative LLC's Answering Brief in Opposition to Defendant Philips Holding USA Inc.'s Motion to Dismiss ("WT Representative's Answering Br.") (D.I. 27). WT Representative hasn't filed an opposition to Philips' motion to stay.  The parties, though, did stipulate that Philips must reply to WT Representative's requests for production within 10 days of

says that the Merger Agreement simply requires FDA Approval of the DUO Venous Systems included in the PMA application; not FDA Approval of all sizes contained in the Merger Agreement.[53] WT Representative also contends that, to the extent that 10mm stents were required for the Milestone Payment, Philips' failure to include them in its PMA application constituted breaches of the Merger Agreement's commercially reasonable efforts and bad faith provisions.[54]

## III.   APPLICABLE LEGAL STANDARD

"When considering a Rule 12(b)(6) motion, the court (i) accepts as true all well-pled factual allegations in the complaint, (ii) credits vague allegations if they give the opposing party notice of the claim, and (iii) draws all reasonable inferences in [the plaintiff's] favor[.]"[55] "Dismissal is inappropriate 'unless the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances.'"[56]

## IV.  ANALYSIS

Philips moves to dismiss WT Representative's three breach-of-contract counts.[57] Delaware governs the Merger Agreement, so its proper construction is a

---

any denial by the Court. D.I. 24.

[53]   WT Representative's Answering Br. at 22-32.

[54]   *Id*. at 32-39.

[55]   *Ont. Provincial Council of Carpenters' Pension Tr. Fund v. Walton*, 294 A.3d 65, 84 (Del. Ch. 2023) (citing *Cent. Mortg. Co. v. Morgan Stanley Mortg. Cap. Hldgs. LLC*, 27 A.3d 531, 535 (Del. 2011)).

[56]   *Id*. (citing *Cent. Mortg. Co.*, 27 A.3d at 535).

[57]   *See generally* Philips' Mot. to Dismiss.

question of law.[58]  "A court must accept and apply the plain meaning of an unambiguous term in . . . the contract language . . ., insofar as the parties would have agreed *ex ante*."[59]  A contract "is not ambiguous simply because the parties disagree on its meaning."[60]  Rather ambiguity exists only if disputed contract language is "fairly or reasonably susceptible of more than one meaning."[61]  And "[a]bsent some ambiguity, Delaware courts will not destroy or twist [contract] language under the guise of construing it."[62]

As a question of law, a contract's proper interpretation might be resolved on a pleadings-stage motion.[63]  But, at the pleadings stage, the movant must show the terms supporting its motion are indeed unambiguous.[64]  And the Court "cannot

---

[58]  *E.g.*, *Exelon Generation Acquisitions, LLC v. Deere & Co.*, 176 A.3d 1262, 1266–67 (Del. 2017).

[59]  *Lorillard Tobacco Co. v. Am. Legacy Found.*, 903 A.2d 728, 740 (Del. 2006).

[60]  *E.I. du Pont de Nemours & Co. v. Allstate Ins. Co.*, 693 A.2d 1059, 1061 (Del. 1997); *see also Sunline Com. Carriers, Inc. v. CITGO Petroleum Corp.*, 206 A.3d 836, 847 n.68 (Del. 2019) (explaining that, because a contract's meaning is a question of law, a court, not the parties, must decide whether the contract is ambiguous or not).

[61]  *Alta Berkeley VI C.V. v. Omneon, Inc.*, 41 A.3d 381, 385 (Del. 2012) (citing *GMG Cap. Invs., LLC v. Athenian Venture Part. I, L.P.*, 36 A.3d 776, 780 (Del. 2012)).

[62]  *Rhone-Poulenc Basic Chems. Co. v. Am. Motorists Ins. Co.*, 616 A.2d 1192, 1195 (Del. 1992) (citing *Hallowell v. State Farm Mut. Auto. Ins. Co.*, 443 A.2d 925, 926 (Del. Super. Ct. 1982)).

[63]  *See, e.g.*, *Allied Cap. Corp. v. GC-Sun Holdings, L.P.*, 910 A.2d 1020, 1030 (Del. Ch. 2006) ("Under Delaware law, the proper interpretation of language in a contract is a question of law. Accordingly, a motion to dismiss is a proper framework for determining the meaning of contract language.").

[64]  *See, e.g.*, *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 615 (Del. 2003); *GMG Cap. Invs., LLC*, 36 A.3d at 783 ("[W]here reasonable minds could differ as to the contract's meaning, a factual dispute results . . . . In those cases, [judgment as a matter of law] is improper." (citations omitted)).

choose between two differing reasonable interpretations of ambiguous" contract language.[65] So, to succeed, the movant's interpretation must be "the *only* reasonable construction as a matter of law."[66] Otherwise, "for purposes of deciding" the motion, the language must be resolved in the non-movant's favor.[67]

### 1. Count I survives because WT Representative's Milestone Payment interpretation is reasonable.

In its first count, WT Representative alleges that Philips breached the Merger Agreement by failing to make the Milestone Payment.[68] WT Representative contends that the Milestone Payment's requirements were satisfied by the FDA's approval order.[69]

Merger Agreement Section 2.8 says that a Milestone Payment is owed if "the FDA Authorization Milestone is achieved[.]"[70] FDA Authorization Milestone is defined as "the receipt by a member of the Parent Group of *FDA Authorization for*

---

[65] *Vanderbilt Income & Growth Assocs., L.L.C. v. Arvida/JMB Managers, Inc.*, 691 A.2d 609, 613 (Del. 1996); *see also Appriva S'holder Litig. Co., LLC v. EV3, Inc.*, 937 A.2d 1275, 1292 (Del. 2007) ("Even if the Court considers the movant's interpretation more reasonable than the non-movant's, on a Rule 12(b)(6) motion it is error to select the 'more reasonable' interpretation as legally controlling." (cleaned up)).

[66] *VLIW Tech.*, 840 A.2d at 615 (emphasis in original).

[67] *Id.*; *see also CRE Niagara Holdings, LLC v. Resorts Grp., Inc.*, 2021 WL 1292792, at *10 (Del. Super. Ct. Apr. 7, 2021) ("Faced with a question of contract interpretation on a motion to dismiss, the Court must determine whether the contractual language is unambiguous. If so, the Court must give effect to its meaning. If, however, the contractual language is ambiguous, the Court must resolve the ambiguity in favor of the non-moving party." (cleaned up)).

[68] Compl. ¶¶ 56-60.

[69] *Id.*

[70] Merger Agreement § 2.8(a)(i).

-11-

*each of the DUO Venous Stent First Generation System and the DUO Venous Stent Second Generation System.*"[71] FDA Authorization is defined in relevant part as "the receipt by Parent from the FDA of *an order approving a Premarket Approval application* or supplemental application."[72] The DUO Venous Stent first- and second-generation-system definitions both include "the Company's stent system designed for the treatment of patients with chronic venous insufficiency, which is comprised of the DUO-HYBRID Stent, the DUO-EXTEND Stent" and specified delivery systems.[73] And both the DUO-HYBRID Stent and the DUO-EXTENT Stent are defined to include stents in multiple sizes, including the 10mm stent.[74]

The FDA's approval is undoubtedly "an order approving a Premarket Approval application." The PMA application in question was submitted to the FDA by Philips, who had "sole discretion" over its contents under the Merger Agreement.[75] And, although the actual order doesn't appear to be attached for the Court's review,[76] the complaint alleges that the FDA approved the DUO Venous

---

[71] *Id.* § 2.8(h)(viii) (emphasis added).

[72] *Id.* § 2.8(h)(vii) (emphasis added).

[73] *Id.* §§ 2.8(h)(v), (vi).

[74] *Id.* §§ 2.8(h)(ii), (iii).

[75] *See id.* § 2.8(c)(i).

[76] There is a summary of the FDA's findings attached to Philips' Motion to Dismiss as an exhibit. *See* Philips' Mot. to Dismiss, Ex. 13 ("FDA Summary"). That attachment appears to be identical to the PMA application attached to the complaint and is dated the same as when the complaint states the FDA issued its order. *See* PMA Application; Compl. ¶ 48.

Stent System in all sizes submitted to it by Philips.[77]

The question, then, is whether the Merger Agreement required FDA approval of the first-generation and second-generation DUO Venous Stent Systems in *all* defined stent sizes, or just approval of the first-and second-generation systems in the sizes submitted.

Reading the Merger Agreement in a light most favorable to WT Representative, it's reasonably conceivable that the parties indeed intended for the FDA's approval to trigger a Milestone Payment if that approval was for the first- and second-generation DUO Venous Stent systems included in the PMA application. It's also reasonable to read "each of the DUO Venous Stent First Generation System and the DUO Venous Stent Second Generation System" as merely requiring approval "of the Company's stent system"; not of every size listed in the DUO-EXTEND Stent and DUO-HYBRID Stent definitions.[78] And, accepting the complaint's facts as true, it appears that the FDA approval order did approve the

---

[77] Compl. ¶ 48.

[78] The FDA allegedly approved the first- and second-generation systems; but not the 10mm stents that weren't submitted. The PMA application, submitted by Philips with full knowledge of the Merger Agreement's requirements and the FDA's inquiry regarding sizes, also didn't include the 10mm stents. The PMA application and FDA approval order details, along with Philips' knowledge and intent relating to those 10mm stents—for the purposes of this count and WT Representative's surviving bad faith claim—can be properly revealed and resolved through discovery. *See Khushaim v. Tullow Inc.*, 2016 WL 3594752, at *3 (Del. Super. Ct. June 27, 2016) ("[W]hen parties present differing—but reasonable—interpretations of a contract term, the Court must examine extrinsic evidence to discern the parties' agreement; such an inquiry cannot proceed on a motion to dismiss." (alteration and internal quotation marks omitted)).

PMA application for the first- and second-generation DUO Venous Stent Systems in all sizes submitted to it.

Philips counters that the Merger Agreement requires approval of the first- and second-generation systems in *all* defined sizes.[79] In support, Philips points to the Merger Agreement's language allowing for partial Milestone Payments if either generation stent is approved, but no language for partial satisfaction if not all of the stent's various sizes were approved.[80] Although Philips interpretation might be considered reasonable too, it isn't the *only* reasonable construction as a matter of law.[81] Because WT Representative has proffered a reasonable interpretation of the Merger Agreement, WT Representative's Count I survives at this pleading stage.

**2. WT Representative's second breach-of-contact claim (Count II) alleging that Philips failed to use Commercially Reasonable Efforts is inadequately pled.**

In its second count, WT Representative alleges that Philips breached the Merger Agreement by failing to use commercially reasonable efforts as required to achieve the FDA Authorization Milestone.[82] Merger Agreement Section 2.8 requires Philips to "use Commercially Reasonable Efforts to achieve the FDA Authorization Milestone (including with respect to achieving FDA Authorization for both the DUO

---

[79] Philips' Mot. to Dismiss at 26-35.

[80] *Id*. at 28-31.

[81] *See VLIW Tech.*, 840 A.2d at 615.

[82] Compl. ¶¶ 61-65.

Venous Stent First Generation System and the DUO Venous Stent Second Generation System)."[83]

WT Representative insists that, to the extent the FDA Authorization Milestone required FDA approval of the 10mm stents, Philips breached its obligation to use Commercially Reasonable Efforts by not including the 10mm stents in its clinical trial or PMA application.[84] Philips says that it did, in fact, include the 10mm stents in the PMA application it submitted to the FDA.[85] And Philips provides numerous documents to prove so.[86] Facing disputed material facts—stemming from attached documents that lie outside the pleadings—the Court can't yet resolve the question of whether Philips submitted the 10mm stents to the FDA in its PMA application.[87] But WT Representative's second count fails for a different reason.

The Merger Agreement's commercially reasonable efforts provision is an external-facing provision. Such provisions require the "relevant yardstick"[88] of

---

[83] Merger Agreement § 2.8(b)(i).

[84] Compl. ¶ 64.

[85] Philips' Mot. to Dismiss at 14-23.

[86] *See id.*, Exs. 4, 7, 10, 11, 15, 16, 18.

[87] *See Malpiede v. Townson*, 780 A.2d 1075, 1082 (Del. 2001) (explaining that a motion to dismiss must be "decided without the benefit of a factual record" and thus, a court "may not resolve material factual disputes"); *In re Gen. Motors (Hughes) S'holder Litig.*, 897 A.2d 162, 168 (Del. 2006) ("all well-pleaded factual allegations are accepted as true"); *Doe 30's Mother v. Bradley*, 58 A.3d 429, 445 (Del. Super. Ct. 2012) ("[T]he Court will not adjudicate contested issues of fact on a motion to dismiss, nor will it deem a pleading inadequate under Rule 12(b)(6) simply because a defendant presents facts that appear to contradict those plead by the plaintiff.").

[88] *Neurvana Med., LLC v. Balt USA, LLC*, 2020 WL 949917, at *17 (Del. Ch. Feb. 27, 2020)

-15-

"efforts and resources comparable to those used by a similarly situated entity."[89]

And this Court has dismissed complaints alleging breaches of similar provisions that "did not identify a single similarly situated entity."[90]

The external-facing "Commercially Reasonable Efforts" provision employed here requires:

> such reasonable, good faith efforts and resources *as a medical device company of a similar size and with similar revenues* as Parent and the other members of the Parent Group would normally use to accomplish a similar objective, activity or decision under similar circumstances and with respect to similar objectives, it being understood and agreed that such efforts and resources *shall be consistent with those efforts and resources commonly used by such a medical device company under similar circumstances for a similar product owned by it*, or to which it has similar rights, which product is at a similar stage in its product life and is of similar market potential . . . .[91]

As defined, the Commercially Reasonable Efforts provision unambiguously requires that Philips use reasonable, good-faith efforts and resources similar to a medical company of a similar size and with similar revenues to it.  The provision further

---

(quoting *Himawan v. Cephalon, Inc.*, 2018 WL 6822708, at *8 (Del. Ch. Dec. 28, 2018)).

[89] *FMLS Holding Co. v. Integris BioServices, LLC*, 2023 WL 7297238, at *7 (Del. Ch. Oct. 30, 2023) (citation and internal quotation marks omitted).

[90] *Compare Himawan*, 2018 WL 6822708, at *6–8 (denying a motion to dismiss a commercially-reasonable-efforts provision breach claim when the plaintiffs alleged that the defendant refused to commercialize an antibody treatment that peer companies were commercializing, noting that "the actions of other similarly situated companies are a relevant yardstick to decide at this stage in the pleadings whether [the defendant] used 'commercially reasonable efforts'"), *with Neurvana Med., LLC*, 2020 WL 949917, at *15–17 (dismissing claim for breach of commercially-reasonable-efforts provision in a post-closing earn-out context when the seller only alleged a poor relationship and disagreement over strategy with the buyer, without referencing similarly situated companies).

[91] Merger Agreement § 2.8(h)(i) (emphasis added).

-16-

requires that those efforts are consistent with those commonly used by such a medical-device company under similar circumstances for a similar product owned by it.

WT Representative's complaint ignores those requirements completely. Instead, the complaint simply asserts that Philips' failure to include the 10mm stents in its PMA application amounts to a breach of the Commercially Reasonable Efforts provision.[92] There's no reference to similarly situated companies or products in the complaint whatsoever. Even when drawing all reasonable inferences in its favor, WT Representative hasn't adequately pled that Philips breached the Merger Agreement by not using Commercially Reasonable Efforts. So, its second breach-of-contract count must be dismissed.

### 3. WT Representative's bad faith claim (Count III) survives dismissal.

In its third breach-of-contract count, WT Representative says that Philips breached the Merger Agreement by acting in bad faith.[93] Merger Agreement Section 2.8(b)(iii) requires that Philips "not take any action in bad faith with the primary purpose of avoiding or minimizing the amount of the Milestone Payment."[94] Bad faith isn't defined in the Merger Agreement.

---

[92] Compl. ¶¶ 54, 64-65.

[93] *Id*. ¶¶ 66-70.

[94] Merger Agreement § 2.8(b)(iii).

WT Representative alleges that Philips acted in bad faith by "taking no action to include the 10mm stent in the VIVID clinical trial, compile the clinical trial data needed to obtain FDA approval of this stent size, or include the diameter size in the PMA Application."[95] The complaint further states that "if Philips believed FDA approval of the 10mm stent was a predicate to achievement of the Milestone, Philips's failure to take any action to obtain such approval can only be explained as a bad faith attempt by Philips to avoid the Milestone Payment."[96]

At this stage, the Court must accept all well-pled facts in the complaint as true.[97] As such, it is reasonably conceivable that Philips acted in bad faith by failing to sufficiently request FDA approval of the 10mm stents while aware that the Milestone Payment required approval of those same 10mm stents. The decision not to pursue 10mm-stent approval with that prior knowledge might indeed qualify as bad faith here. And the claim may also survive as an alternative to WT Representative's Count I if discovery reveals that the parties did in fact intend for 10mm stents to trigger the Milestone Payment. Thus, drawing all reasonable inferences in WT Representative's favor, Philips' bad faith claim is adequately pled.

---

[95] Compl. ¶ 64.

[96] *Id.* ¶ 69.

[97] *E.g.*, *In re Gen. Motors (Hughes) S'holder Litig.*, 897 A.2d at 168.

## V. CONCLUSION

For the foregoing reasons, Philips' Motion to Dismiss as WT Representative's Counts I (Breach of Contract—Failure to Make Milestone Payment) and III (Breach of Contract—Bad Faith) is **DENIED**.  But dismissal is **GRANTED** on WT Representative's Count II (Breach of Contract—Failure to Use Commercially Reasonable Efforts).

**IT IS SO ORDERED.**

/s/ *Paul R. Wallace*

_____

Paul R. Wallace, J.